Good morning, may it please the Court. My name is Barron Parekh on behalf of Plaintiff Appeals. The case below is really being appealed on two relatively simple issues. One is, did the Court err in applying Rule 9b rather than simply Rule 8? And second is, did the lower court finding that as a matter of law, that no reasonable person could have been misled by the statements alleged by plaintiff err in that finding? To take the Rule 9b issue first, the procedural history of this case is that it was brought under state law and in state court. It was removed solely because of CAFA and the essential first pleadings were state law claims and brought as if they were being put forth in state court. The initial complaint was kept the same when the federal court ruled on it in its first motions dismiss. And despite the fact that at no point in any part of that complaint did plaintiff actually allege fraud or allege any intent to deceive as is necessary under California law for fraud, the Court still went ahead and applied Rule 9b. We believe that that was simply an error, that there is no reason that the Rule 9b standard needed to have been applied to that first complaint and that there's nothing in that complaint that would rise to the level of pleading common law fraud. Well, I mean, the claim is that your client thought he was getting what would work as a telephone and he wasn't told its limitations and so he bought it not knowing what he was buying. Sure sounds like fraud to me. Well, but fraud under California law requires an intent to defraud and that's the difference between common law fraud and the California consumer protection action that we brought. And the difference there is that there doesn't need to be any intent. Is that the measure for 9b? 9b's point is to flesh out claims that sound in that nature. It's not limited to common law claims of fraud. It clearly applies to other causes of action that sound in fraud. To tell me that California has a narrow definition of fraud or adds an element that might be more difficult doesn't tell me the core of the claim isn't a generic kind of fraud claim that 9b is intended to apply to. Well, even a generic kind of fraud claim involves some degree of ciencer. You need to have an intent to defraud in order for there to be a claim of fraud. And in here, I mean, we don't need an intent at all. It could be an innocent mistake. Maybe Saturn didn't realize that their card wasn't capable of doing the things that plaintiff says they were. There's no reason that we think that this is fraudulent. But what logic is there in saying that 9b wouldn't apply to that? 9b is intended to flesh out specifics about where the misleading came from. And you're still saying there's misleading. You're just saying there wasn't intent to mislead. That doesn't tell me why 9b doesn't intend to require fleshing out. I would respectfully disagree that 9b would apply to any claim where there's some allegation of something being misleading. I mean, as Vess specifically says, you need to actually have a finding that fraud is being alleged before Rule 9b applies. And you can have claims that distinguish between things where fraud is alleged and, you know, part of the claim where fraud isn't alleged. If all you had to do in order to invoke Rule 9b was that somebody was misled, then every action under any statute where any aspect of misleading nature is brought up would fall under Rule 9b. And respectfully, I just don't think Rule 9b was intended to be that broad. And I think Vess is actually very clear on that point, because what it does is it analyzes the California cause of action for fraud. It states what the elements of that action are, analyzes whether or not plaintiff pled elements of those actions, and then goes back and says, well, in this particular cause of action, yes, they did, and, therefore, this part of the complaint should be read under Rule 9b. And in this part, they didn't, and, therefore, that part of the complaint shouldn't be viewed under Rule 9b. So I do think that there is a distinction between simply a misleading statement being alleged and having to invoke Rule 9b. On the second point, even on the Third Amendment complaint, after plaintiff had alleged all the statements with particularity, the lower court didn't find that we didn't allege it with particularity or that we didn't meet the standard of law that it's in its opinion that the statements made below could not possibly have misled a reasonable consumer. I mean, this is a relatively simple matter of whether or not somebody was misled. And I don't think there's any dispute that a reasonable consumer reading the statements made by Saturn that this was essentially an in-car telephone system would have thought that it was an in-car telephone system. I mean, there's just a common-sense reading of what it is that Saturn was advertising the OnStar system as was that it's an in-car telephone. And reasonable consumers, we believe, expect telephones to function the same way across the board, whether they're an in-car telephone, a telephone you hold in your hand, a telephone you plug into the line at home, that they should be able to providing the basic functionalities of a telephone. And for the last 20 to 30 years, one of the basic functionalities of a telephone is the ability to transmit touch tones. For example, this court's very own system, when you dial the general number, cannot be navigated if you don't have the ability to push in touch tones. So how can Saturn sell the system, call it a telephone, advertise it as being a hands-free telephone, but then not tell anybody, oh, by the way, you know what, you won't be able to navigate any voicemail system. There's virtually no business in existence now that you can call and not be required to at least push a couple of buttons in order to get to somebody, even just get to an operator in order to get any further. And what this does is it changes the basic functionality of that system into not being able to be used as a regular telephone. It's not that they can't do it hands-free. They can't do it at all. They have to hang up whatever call they're on, pull out their own personal cell phone, and then use that in order to call somebody. We just don't think that it rises to the, maybe there's some, you know, grounds for dispute. Whether or not a jury at the end of the day finds these statements to be misleading is one thing. We just don't believe that, as a matter of law, that that is something that the lower court should have ruled on. I would like to reserve the last three minutes for rebuttal. Certainly. I'm sorry. I don't want to use this. There are two theories here, right? One, pure agency. Saturn was the agency. And are you pushing the claim that Saturn is responsible on its own for misconduct here through their representation? I think the district court rejected that. Are you pushing that still? We're primarily focused on their own responsibility rather than the agency theory. The agency theory only comes into play as to the oral statement of Mr. Cross. That's a single statement. All the rest of the materials that are cited in the complaint, there's no question, were published by Saturn Corporation and were issued by Saturn Corporation. So we don't believe that the agency theory even plays a role in the rest of those statements. Okay. Good morning, Your Honor. I'm Greg Oxman. I represent Saturn Corporation. Saturn, addressing Mr. Upperecht's second point, Saturn didn't say this had all the functions of a regular telephone. Saturn didn't advertise that this phone had the capability of accessing automated phone systems. The appellant never alleged facts that would give rise to an affirmative duty to disclose under the Doherty and Barden cases. The OnStar Guide, which he doesn't even allege he read before he purchased the view, only says some views may have a button, and if they have that button, they may be able to access automated phone systems. So there's no allegation of a false statement and no allegation of the essential element of causation. So in our view, all the appellant is left with is this alleged oral statement by Mr. Cross. An employee of an independently owned and operated dealership. The allegation that somehow Saturn was the source of the misinformation that Mr. Cross allegedly passed to the appellant isn't sufficient. It's rank speculation. The agency allegations are insufficient. Rule 9B does apply, so the agency allegations have to be alleged with particularity. Why would the, even if 9B applies to the allegations of why the statements are misleading, to explain that in detail, why would 9B also apply to the allegations regarding the relationship between Saturn and the dealership? Because that in itself isn't a fraudulent act, it's just a relationship that either is close or isn't close, but there's nothing fraudulent about it. Well, there's significant case law that says that, including this Court's decision, the Schwartz case of 494-76, fed third, which basically says you can't just lump everyone in and say everyone's the agent of everyone else without providing some meat on the bones, so to speak, under Rule 9B. There is other case law, not from this circuit, that we do cite in our brief. Passing back to the... If I understand your argument, if you're right on accepting Judge Graber's distinction, if you're right on they have an alleged fraud, at least as the misrepresentation, you don't have to reach the other issue, right? Or do we? As I understand the appellant's position, they're saying essentially Saturn should have disclosed this without regard to what Mr. Cross said. No, let's look at Mr. Cross, though, because that's where the agency comes in. Are you arguing that the allegations with respect to Mr. Cross's statements were also insufficient under 9B in and of themselves, or were those particular allegations sufficient and then we reached the question of agency? The latter, Your Honor. Okay, so we have to decide with respect to Mr. Cross whether Rule 8 or Rule 9B applies to the pleading of the agency relationship. I think the answer to that is no, Your Honor, because I think under 8B this claim fails the test. But obviously if 9B applies, it fails it even worse. And let me just flesh out my comments on the agency theory. The general rule, as reflected in this Court's decision in Boat and Motor Mart, and a case that Judge Trager wrote in a McDonald's case in 1999, make it clear that the general rule, I could read the quote, Your Honor. I'm sure he remembers it well. Word for word. It's 1999, U.S. District, Lexus 9587. That's start page 17, Your Honor. And what it says basically is the general rule, it says that it's horned o'clock across the country that a franchisee is an independent contractor. And our position here is that rule applies absent a lot more facts, either under 8 or 9. And there aren't any more facts here. The two theories that Mr. Parekh has advanced in support of, if you will, an exception to that general rule, are implied agency. Implied agency requires two things that he doesn't and can't allege. Complete control over the day-to-day operations of the franchise, and the right to terminate the franchise relationship at will. The franchise contract doesn't permit that, and state law prohibits it in the case of an automobile dealership. He passes to the question of ostensible authority, which is a theory he came to very late below. His ostensible agency theory fails because he doesn't ever allege that he thought that the Saturn dealer who employed Mr. Cross and Saturn were one and the same. That distinguishes his case from the Kaplan versus Colwell Banker case that he cites. He never alleges that he was misled into believing that Saturn and the Saturn dealership were one and the same. The other essential element of ostensible agency is he has to show that he was misled, not by something that the alleged agent said, but something that the alleged principal said. And Saturn never said anything. He doesn't allege Saturn never said anything and misled him into any belief that the two were one and the same. So you're really not asking for a 9B dismissal anymore. I mean, this seems to have moved ñ it started with 9B and pleading with the original complaint, and I better understood it then. But by the time of the Third Amendment complaint, there's really not a question of whether there's enough detail there. It's whether there's a there there. Well, there's anything at all, Your Honor, and there isn't. That's exactly right. Well, is this the right stage to decide that? I mean, our court said earlier this year in the Gerber Products case that usually demur is not the place you make a decision about whether there's a factual cause of action. And you're really asking us to look at the facts. Well, I'm asking you to look at the allegations, and I understand I'm not abandoning my 9B point. I think this panel is bound by the Schwartz case in that regard, Your Honor. But this complaint is so barren that whatever the usually rule is ñ It's barren. It is about as detailed a complaint as I imagine. Your argument is not that there's no detail, but that the details don't add up to enough. Well, that's right. So is that a pleading problem or a factual problem? Is there enough fact? Well, I think it's a pleading problem, Your Honor. It's going to be a factual problem if the panel disagrees with me, but it's certainly a pleading problem. When you allege a bunch of things that a ñ let me make one other point about California law. The Syslaw case says, and this is a very important point, if you're a franchisor, you've got the right to set operating standards to protect you in terms of how your franchisees do their business in order to protect your trademarks, your trade name, and your goodwill. And you ought to be able to do that without worrying that there's going to be an after-the-fact finding of agency that's going to make you responsible for everything that every employee of your dealer does, even though you're in absolutely no position to control it. So it's particularly in the franchise context, California law is clear that the test for agency is much, much higher than in the case of, for example, whether a supposed employee is really an independent contractor. Because the franchisor has an interest in basically upholding its good name, and it may do things like making the Saturn people have a blue sign or a red sign or have a particular style of the look that they're building. Those are all perfectly appropriate things for a franchisor to do in the context of a relationship, which is a relationship of an independent contractor for the franchisor. Unless there are other questions. I don't believe we have any other questions. Thank you. Mr. Korek, you have some time remaining. Just really two points. One is that I think Judge Clifton got it perfectly right. This is really a question of is there enough there there. And we believe that the complaint is detailed enough by the time you get to the Third Amendment complaint of whether you apply Rule 8 or whether you apply Rule 9B, that we've given all the time, place, manner, content required to survive under Rule 9B. The second point is that it goes back to the question of is this an appropriate thing to have decided on a motion to dismiss. And for the lower court to have substituted its judgment as to what a reasonable consumer might have been misled or not been misled by the statements that were made by Saturn, we believe simply is not an appropriate use of the court's power at this stage of the process. Because we believe at the very least that the statements raise a reasonable question of fact as to what a consumer would or would not have believed. I don't want you to have to go through your complaint, but on the agency theory, what have you alleged in that complaint that you think meets California's test for franchise that distinguishes franchise from a normal agency? Although, you know, Appellee's cites the CIS law, we believe the more appropriate decision is the more recent one in Kaplan. And in Kaplan, the court expanded what it considered to be an appropriate agency theory to not be exclusively whether or not it had control over day-to-day operations and firing, but whether from the perspective of the person going into the franchise or going into the relationship, whether it appeared that the agent was acting on behalf of the principal. And the specific issues here are Saturn not only controls what the store looks like and things like that, but it also controls exactly what the sales process should be. It implies, it applies a specific sales process. It calls its stores retailers rather than dealerships. It tries to distinguish itself from a normal automobile dealership by offering no haggle pricing and that somebody going into a Saturn store would reasonably have the expectation that they were dealing with Saturn, not with an independent contractor. And we believe that without going into every single detail. Thank you. Thank you, counsel. We appreciate the arguments of both counsel. The case just started to be submitted. And we'll hear one more before taking a break, just so you can plan, those of you out there. Our next case is United States versus Lewis. Counsel may begin whenever they get settled in.
judges: Graber, Clifton, Reed